FILED

2010 Feb-23  PM 04:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **2:08-CR-00245-LSC-PWG** |
| | ) | |
| **WILLIAM B. BLOUNT and** | ) | |
| **ALBERT W. LAPIERRE,** | ) | |
| **Defendants.** | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by and through undersigned

counsel, and respectfully submits this Sentencing Memorandum in advance of the

February 26, 2010, sentencing of the defendants.  The United States asserts that

the terms of imprisonment set forth in each plea agreement will address both the

defendants' criminal conduct and substantial assistance.

## THE DEFENDANTS' CRIMES

The defendants' crimes, the details of which are set forth in their Plea

Agreements and Presentence Investigation Reports, and of which the Court heard

evidence during the Langford trial, can be summarized as follows:

The defendants gave money to, paid off loans, and bought expensive

clothing and jewelry for Jefferson County Commission President Larry Langford

over a four year period to influence Langford to include Blount and his company, Blount Parrish, in lucrative Jefferson County financial transactions.  Langford solicited and accepted these items of value totaling approximately $235,000.00 from Blount and LaPierre, intending to be influenced and rewarded.  In fact, Langford used his power and influence  to include Blount Parrish in Jefferson County financial transactions and thereby generated approximately $7.2 million in fees for Blount and his companies.[1]  LaPierre, who worked for Blount on an essentially contingency fee basis,  received hundreds of thousands of dollars from Blount during the conspiracy.[2]

Among the items of value requested by Langford and given by Blount and LaPierre to influence and reward him were:

A.  Blount helped Langford obtain a $50,000 six month, unsecured loan from Colonial Bank despite Langford's poor credit rating.  When this loan became past due, LaPierre obtained a $50,000 loan from Colonial Bank to payoff the Langford loan.  Blount then transferred $50,000 to LaPierre to payoff his Colonial

---

[1]  Rather than disclosing Blount's fees in the public documents, Langford and Blount attempted to conceal these fees from the public and other commissioners through the use of "side letters."

[2]  LaPierre did not claim as income the fees Blount paid to him.  During calender years 2003 through 2006, LaPierre's taxable income and tax due and owing were significantly understated.  The tax loss is $98,433.00.

Bank loan.

B.  After Langford asked LaPierre for money, Blount transferred $69,000 to LaPierre, who wrote a check to Langford for that same amount.  Langford then deposited the money into his account and used a portion of the money to purchase audio equipment and expensive clothing.

C.  After Langford asked for more money, Blount transferred $30,000 to LaPierre, who wrote a check to Langford for that same amount.  Langford then used the money to obtain an official check from Compass Bank to pay his personal taxes.

D.  While on trips to New York City with Langford and others related to Jefferson County financial transactions, Blount, at Langford's request, went shopping with Langford and bought expensive clothing and jewelry for Langford. Several of these items were mailed to Langford's county office.

E.  Blount and LaPierre set up an account at Remon's Clothiers for Langford.  Over the next several years, Langford selected clothing from Remon's and Blount and LaPierre used their American Express cards to pay the account.

F.  Langford selected Rolex watches and other expensive jewelry from Bromberg's that Blount purchased for Langford.

3

Langford, Blount, and LaPierre also attempted to obstruct justice.  In late 2006, the SEC began investigating the Jefferson County financial transactions and the relationship between the defendants; it issued subpoenas for testimony and documents to Langford, Blount, and LaPierre.  Langford testified before the SEC in June 2007 that he borrowed money from LaPierre and the loans were secured by real property.  This testimony was consistent with the conspirators' earlier agreement to conceal these illegal bribes by calling them loans.  After Langford's SEC testimony, the conspirators met in Langford's downtown loft and signed fake promissory notes in an attempt to support Langford's testimony and their false story.  Langford, knowing of the parallel criminal investigation, subsequently submitted the fake promissory notes to the SEC.

Blount also bought items of value for Commissioner Mary Buckelew who, along with Langford, served on the committee tasked with overseeing Jefferson County's finances.  On or about December 11, 2003, during one of the New York trips related to the financial transactions, Buckelew found shoes and a purse she admired at Salvatore Ferragamo.  Blount bought these items (totaling approximately $1500.00) for Buckelew and had them mailed to Buckelew's office at the Jefferson County Courthouse.  Similarly, on or about November 7, 2004, on another trip to New York City, Blount bought approximately $1,119.00 worth of

4

items that Buckelew had found in the Salvatore Ferragamo store and had them

mailed to her office at the Jefferson County Courthouse.

## SECTION 3553(a) FACTORS

Section 3553(a) provides that the sentencing court shall, in determining the

particular sentence to be imposed, consider -

    (1)  the nature and circumstances of the offense and the history and
characteristics of the defendant;

    (2)  the need for the sentence imposed

        (A)  to reflect the seriousness of the offense, to promote respect
for the law, and to provide just punishment for the
offense;

        (B)  to afford adequate deterrence to criminal conduct;

        (C)  to protect the public from further crimes of the defendant;
and

        (D)  to provide the defendant with needed educational or
vocational training, medical care, or other
correctional treatment in the most effective manner;

    (3)  the kinds of sentences available;

    (4)  the kinds of sentence and the sentencing range established for ...
the applicable category of offense committed by the applicable
category of defendant as set forth in the guidelines;

    (5)  any pertinent policy statement;

(6)  the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The United States submits that consideration of these factors and the defendant's substantial assistance leads to the conclusion that a sentence of 52 months imprisonment for Blount and 48 months for LaPierre is appropriate.[3]

The nature and circumstances of the offense are well-known to the Court. For over four years, Blount and LaPierre greedily paid bribes to the top elected official in Jefferson County.  Langford shamelessly requested, secretly accepted, and repeatedly acted on those bribes, thereby violating his oath of office, the public's trust, and the law.  This bribery scheme was enormous in the amount of the bribes paid to the corrupt public official and the benefit to the bribe payor. Even the middleman in this scheme profited handsomely.  The damage caused by this conspiracy will be felt for years as the citizens of Jefferson County once again must deal with the lasting effects of having been duped by a corrupt politician and his cohorts.  And Jefferson County teeters on the brink of bankruptcy due in part

---

[3]  Blount's recommendation is more favorable than LaPierre's despite Blount's greater role in the conspiracy because Blount's assistance proved to be more substantial to the United States.

to the risk to which it was exposed as a result of the repeated financial transactions presided over by Langford and from which all three conspirators profited.

The defendants' crimes were serious; their punishment should be also.  This case, in particular, requires a sentence that reflects the seriousness of the offenses, promotes respect for the law, and punishes the defendants.  Despite the defendants' complaints of living in a "prison without bars," only a significant sentence to a real prison -one with bars- will adequately address the seriousness of their crimes.  Certainly there are collateral consequences for criminals who are caught and convicted of any crime; however, those consequences are largely self-imposed.  The Court must now impose punishment according to law, and only meaningful terms of incarceration, such as those recommended by the government, will adequately punish the defendants for their egregious conduct and promote respect for the law.  The loss of licenses and reputation and the like is not adequate punishment.

Moreover, this Court is in a unique position to impose a sentence that not only justly punishes the defendants but that also deters others from engaging in similar criminal conduct.  "[D]eterrence is particularly important in white collar crimes."  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).  Because this case has been closely watched by other politicians, officeholders, and people

7

seeking to do business with public entities, the Court can and should impose sentences that will serve as unmistakable warnings that the corruption of government is a serious matter that will be punished accordingly. A sentence that deters others will help to restore to the citizens of Jefferson County the confidence in government that Langford, Blount, and LaPierre so selfishly stole.

The Court has a full range of sentencing options, including imprisonment, restitution, fines, and forfeiture. The recommended sentences of incarceration are well below both the low end of the advisory guideline range of 168-210 months and the statutory maximum sentences of 15 years (Blount) and 8 years (LaPierre). Moreover, the Court must impose restitution to the victim of the defendants' crimes. 18 U.S.C. § 3663A.

## RESTITUTION

The defendants object to restitution, arguing not about the amount of restitution ($5.5 million) but that there is no identifiable victim. Pursuant to 18 U.S.C. § 3663A(a)(1), the court must order restitution to the victim of the offenses. "[T]he term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the

defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."
18 U.S.C. § 3663A(a)(2).

Jefferson County was directly harmed by the defendants' criminal conduct and is a victim of the defendants' conspiracy. Although Blount Parrish's fees on the swap transactions, from which Blount Parrish generated the lion's share of its profit, were paid by wire transfers from JPMorgan and Bear Stearns, those fees were incorporated into the pricing of the transactions and thereby passed on to Jefferson County. The "side letters" from the banks (attached hereto as Exhibit A), which Langford adopted by his signature and initials, prove the victimization of Jefferson County:

A. In the July 28, 2003, side letter relating to the 2003-C transaction, JPMorgan stated, and Langford agreed that, "the payments outlined below (including the $2.6 million fee paid to Blount Parrish) are expenses that were incorporated into the price of the interest rate swap at the time of execution." [GX 61].[4]

B. In the November 24, 2003, side letter, JPMorgan stated that Blount Parrish's fee of $225,000.00 was "an expense that was incorporated into

---

[4] This form of citation is used as a reference to a government exhibit admitted during the Langford trial.

JPMorgan's pricing of the Transaction at the time of execution thereof, which pricing has been approved by the County and its advisors."  [GX 84].

C.  In each of three letters sent by Bear Stearns to Langford on June 22, 2004, in relation to the 2004 swap transaction, the bank states that Blount Parrish's fees totaling $2.4 million were "expenses that were incorporated into Bear's pricing of the transaction at the time of execution thereof, which pricing is based on a spread to the mid-market valuation of the transaction and which has been approved by the County acting with the advice of its swap advisor." [GX 144-146].

Because Jefferson County suffered harm in an amount equal to the profit Blount Parrish earned as a result of the defendants' bribery scheme, restitution of $5.5 million should be ordered as to each defendant, and each defendant should be jointly and severally liable for the entire amount.

## THE DEFENDANT'S COOPERATION

The government's recommended sentences also generously reward the defendants' substantial assistance.  In separate filings, the government is requesting that the Court depart below the advisory guideline range pursuant to U.S.S.G. § 5K1.1.  Although the defendants' cooperation was commendable and valuable, "[it] is not a get-out-of-jail-free card, and 'does not wash the slate

clean.'" *United States v. Livesay,* 484 F.3d 1324, 1330 (11th Cir. 2007)(quoting

*Martin*, 455 F.3d at 1238)).

## CONCLUSION

Based upon the foregoing and its plea agreements with these defendants, the

United States recommends that the Court sentence Blount to 52 months

imprisonment, restitution of $5.5 million to Jefferson County, and forfeiture of

$1 million.  The United States furthers recommends that LaPierre be sentenced to

48 months imprisonment, restitution of $5.5 million to Jefferson County and

$98,433.00 to the Internal Revenue Service, and forfeiture of $371,932.00.


Respectfully submitted

JAMES E. PHILLIPS
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515



/s/                                                    /s/
GEORGE A. MARTIN, JR.           TAMARRA MATTHEWS JOHNSON
Assistant United States Attorney     Assistant United States Attorney


/s/                                                    /s/
SCARLETT M. SINGLETON          LLOYD C. PEEPLES
Assistant United States Attorney     Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed

with the Clerk of Court, Northern District of Alabama, on the 23rd day of

February, 2010, using the CM/ECF filing system which will send notification of

said filing to all counsel of record.


GEORGE A. MARTIN, JR.
Assistant United States Attorney
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205)  244-2254

12